UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No. 4:19-CR-00412 AGF (PLC) |
| DAVID M. FOSTON, ) | |
| aka "Max," and "Prez," ) | |
| Defendant. ) | |

## GUILTY-PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are defendant DAVID M. FOSTON, represented by defense counsel, Nick Zotos, and the United States of America (hereinafter "government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for defendant's voluntary plea of guilty to the lesser include offense of conspiracy to distribute cocaine under Count I, no further federal prosecution will be brought in this District relative to the defendant's involvement in the conspiracy to distribute cocaine, heroin or fentanyl from March 1, 2018 to May 29, 2019 of which the government is aware at this time.

The United State Attorney's Office further agrees not to file an information pursuant to Title 21 United States Code Section 851 detailing the defendant's prior convictions for serious

drug felonies. The defendant acknowledges that as he was originally charged in the indictment and if the court determined the defendant had two or more prior convictions for serious drug felonies, the defendant would be subject to twenty-five (25) years mandatory imprisonment on Count I under Title 21 United States Code Section 841(b)(1)(A).

The parties also agree that the U. S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant agrees, pursuant to the guilty plea of the lesser-included offense of conspiracy to distribute cocaine under Count I to forfeit to the United States all property subject to forfeiture under the applicable statutes, including but not limited to the following:

    a.    One million, three-hundred and four thousand, eight-hundred and four dollars ($1,304,804.00) in United States Currency located and seized by law enforcement from OTIS B. DODD, aka O.B. Dodd, "O.B.," in Phelps County, Missouri on March 17, 2018.

    b.    A 2011 Ford F-350 Utility Truck, VIN#: 1FD7X3F69BEC53956, located and seized by law enforcement from OTIS B. DODD, aka O.B. Dodd, "O.B.," in Phelps County, Missouri on March 17, 2018.

    c.    Two-hundred and sixty-three thousand dollars ($263,000.00) in United States Currency located and seized by law enforcement from CARLOS MACIAS and LINA KATIUZCA

MACIAS, aka Lina Katiuzca Mendez, in Craig County, Oklahoma on July 25, 2018.

    d.    Three-hundred and eighty-five thousand dollars ($385,000.00) in United States Currency located and seized by law enforcement from KENNERSEN L. GOODEN, aka Kenneth Dodd; GUY R. GOOLSBY, aka "Richocet," "Shay," "Shorty;" GRANT A. BERRY, aka "Kojak," "Jak," "50;" DAVID M. FOSTON, aka "Max," "Prez;" CHIVAS HOLMES, aka "Q Ball," "Q;" and SHANNON L. HOLMES in Houston, Texas on October 6, 2018.

    e.    Twenty-thousand, nine-hundred and forty-five dollars ($20,945.00) in United States Currency located and seized by law enforcement from the residence of GUY R. GOOLSBY, aka "Richocet," "Shay," "Shorty," at 3848 Hirondale Lane, St. Louis, Missouri on March 12, 2019.

    f.    A 1969 Chevrolet Camaro, VIN#: 123379N663935, located and seized by law enforcement from the residence of GUY R. GOOLSBY, aka "Richocet," "Shay," "Shorty," at 3848 Hirondale Lane, St. Louis, Missouri on March 12, 2019.

    g.    A gold-color Rolex wristwatch located and seized by law enforcement from the residence of GUY R. GOOLSBY, aka "Richocet," "Shay," "Shorty," at 3848 Hirondale Lane, St. Louis, Missouri on March 12, 2019.

    h.    A silver-color Rolex wristwatch located and seized by law enforcement from the residence of GUY R. GOOLSBY, aka "Richocet," "Shay," "Shorty," at 3848 Hirondale Lane, St. Louis, Missouri on March 12, 2019.

    i.    Fifty-four thousand, four-hundred and seventy-two dollars ($54,472.00) located and seized by law enforcement from the person of DAVID M. FOSTON, aka "Max," "Prez," outside 10827 Midland Boulevard, St. Louis, Missouri on April 11, 2019.

    j.    Eight-thousand, seven-hundred and sixty dollars ($8,760.00) in United States Currency located and seized by law enforcement from one of the residences of DAVID M.

FOSTON, aka "Max," "Prez," at 10827 Midland Boulevard, Apartment #6, St. Louis, Missouri on April 11, 2019.

### 3. ELEMENTS:

#### a. Count I:

As to Count I, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846, and admits there is a factual basis for the plea, and further fully understands that the elements of the crime are the following:

1. At a time prior to date of the indictment, the defendant and other persons reached an agreement or came to an understanding to distribute to another person, cocaine, a controlled substance;

2. The defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect;

3. At the time the defendant joined in the agreement or understanding, he knew of the purpose of the agreement or understanding.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to U.S.S.G §1B1.3:

#### A. Summary of Conspiracy and Background of Investigation:

In early 2018, investigators from the Drug Enforcement Administration (DEA) uncovered a cocaine, heroin, and fentanyl distribution organization that was transporting kilogram quantities of cocaine, heroin and fentanyl from Mexico, through Texas and Florida to the St. Louis Metropolitan area and the Eastern District of Missouri. The higher-echelon of the conspiracy had

4

met in the Federal Correction Institution in Florence, Colorado in the late 2000s and early 2010s as they were serving federal prison sentences for prior controlled substance violations. Investigators were able to identify the following individuals involved in the conspiracy:

1. The St. Louis based distributors were the defendant David M. Foston, aka "Max," and "Prez;" and co-defendants Grant A. Berry, aka "Kojak," "Jak," and "50;" Guy R. Goolsby, aka "Ricochet," "Shay," and "Shorty;" and Chivas Holmes, aka "Q-Ball," and "Q."

2. The Texas based source of supply of controlled substances was co-defendant Kennerson L. Gooden (Gooden,) and his assistants were co-defendants Jonathan W. Jefferson (Jefferson) and Harold Arceneaux (Arceneaux).

3. The Florida based source of supply was David Martinez (Martinez).

4. The couriers who transported the controlled substances or drug payments to and from the St. Louis area were co-defendants Otis B. Dodd (Otis Dodd), Mario Aquilar-Estrada (Aquilar-Estrada), David Lee Trevino (Trevino), Carlos Macias, Lina Katiuzuca Macias (Lina Macias), Jorge A. Lopez-Duran (Lopez-Duran), and Shannon Holmes.

**B.     Specific Transactions between March 2018 and October of 2018.**

Between March 17, 2018 and October 6, 2018, DEA investigators uncovered several large shipments of cocaine, heroin, fentanyl, and/or drug proceeds and payments the organization shipped to and from the Eastern District of Missouri.

**1.     Seizure of 1,304,804.00 of Drug Proceeds and Payments on March 17, 2018.**

During the week of March 11, 2018, the defendant, Goolsby, and Berry ordered a multi-kilogram quantity of cocaine from Gooden and his sources of supply. At that time, DEA developed a confidential source (hereinafter: CS-1) in the Houston, Texas area. CS-1 reported that one of

5

Gooden's couriers, Gooden's uncle Otis Dodd, was using a white truck equipped with a hidden compartment to transport large amount of cocaine to the St. Louis, Missouri area for Gooden. CS-1 provided Otis Dodd's telephone number and a geo-location warrant for that telephone was authorized. Investigators tracked Otis Dodd arriving in the St. Louis area around March 11, 2018. Gooden also traveled separately to St. Louis, Missouri where he maintained a residence, a loft style apartment at 1136 Washington Avenue, Loft 901, St. Louis Missouri, and a "stash house" at 11126 Larimore Road, St. Louis, Missouri. Otis Dodd delivered the cocaine to Gooden's "stash house" where it was unloaded. The defendant took possession of one-fifth of the cocaine to distribute to others. Goolsby took two-fifths of the cocaine for distribution, and Berry took two-fifths of the kilograms of cocaine for distribution. On March 13, 2018, the defendant, Goolsby, Berry and Gooden met at Gooden's loft. The defendant, Goolsby, and Berry brought large parcels of money to that meeting to pay for the cocaine Gooden had Otis Dodd transport to St. Louis two days before. Investigators were unable to locate and seize the cocaine before the defendant, Goolsby, and Berry took possession of their portions of the shipment and distributed the cocaine to their lower-level distributors and customers. Gooden and Otis Dodd then loaded the defendant's, Goolsby's, and Berry's payments into the concealed compartment of Otis Dodd's truck, and Dodd left to return to the Houston Texas area for Gooden to pay his sources of supply.

On March 17, 2018, investigators used a marked police unit to pull over Otis Dodd as he traveled southwest towards Texas in Phelps County, Missouri. Inside of the concealed compartment, investigators located and seized $1,304,804.00 of drug proceeds and payments from the defendant, Goolsby, and Berry to Gooden and his sources of supply for the cocaine that was delivered on March 11, 2018 and distributed.

    2.       **Seizure of $385,000.00 of Drug Proceeds and Payments on October 6, 2018.**

6

By October of 2018, investigators were able to develop a confidential source (hereinafter CS-3) who had access to the upper-echelon of the conspiracy. Investigators provided CS-3 with a cellular telephone to communicate with the other members of the conspiracy and DEA recorded all the conversations between CS-3, the defendant, Goolsby, Berry, and others. In early October 2018, investigators directed CS-3 to set up the sale of 25 kilograms of fictitious cocaine to the defendant, Goolsby, Berry, and Chivas Holmes. Over the course of several days, CS-3 talked to the defendant, Goolsby, and Berry independently to arrange for partial payment of $385,000.00 in cash for the fictitious cocaine. During this time, Chivas Holmes secured Shannon Holmes' assistance to transport the $385,000.00 to CS-3 in Texas and pick up the "cocaine." Chivas Holmes offered Shannon Holmes some of the product Chivas Holmes was to receive in the deal and a relatively small courier fee to drive to Texas and back. Goolsby ("Shorty"), Berry ("50"), and the defendant ("Prez") each contributed $100,000.00 and Chivas Holmes put in $85,000.00. The $385,000.00 was approximately half the necessary payment for the 25 kilograms of cocaine. CS-3, the defendant, Goolsby, Berry, and Chivas Holmes agreed that the defendant, Goolsby, and Berry would each receive approximately 7 kilograms of cocaine and Chivas Holmes was going to receive 3 kilograms of cocaine. The cash was wrapped in plastic wrap or placed in cardboard boxes for transport. Each of the plastic bundles had the nickname of the owner of the money in black marker. Chivas Holmes' money was contained in a cardboard box. The jointly-pooled money was loaded into a duffel bag and the bag was loaded into a pick-up truck secured by Chivas Holmes.

On October 6, 2018, Shannon Holmes drove to Cleveland, Texas and met with CS-3 and an undercover police officer at an Exxon Gas station. CS-3 then directed Shannon Holmes to drive the truck to an undercover DEA safe house in the area. At the safe house, Shannon Holmes gave

CS-3 the duffel bag containing the $385,000.00 in cash and CS-3 provided the 25 kilograms of fictitious cocaine to Shannon Holmes. Shannon Holmes loaded the "cocaine" into Chivas Holmes' pick-up truck and began to drive back to towards Missouri. DEA investigators directed a uniformed Cleveland, Texas police officer to pull over Shannon Holmes and recover the fictitious cocaine before the defendant, Goolsby, Berry, and Chivas Holmes discovered it was fake. The officer located the bag of "cocaine" in Shannon Holmes' possession and seized it.

**C.     April 11, 2019 Seizure of Drug Proceeds and Cutting Agents.**

On April 11, 2019, DEA investigators assisted the United States Marshal's Service (USMS) in effecting the arrest of the defendant relative to a federal supervised release arrest warrant. Investigators had previous identified two residences that the defendant was utilizing, 8000 January Avenue, St. Louis, Missouri and 10827 Midland Boulevard, Apartment #6, St. Louis, Missouri. An arrest team was dispatched to each of the addresses. USMS personnel made entry into 8000 January Avenue and located the defendant's cousin at that residence. Unknown to investigators at the time, someone had contacted the defendant via cellular telephone and warned him about the arrest attempt at 8000 January Avenue. Just after the USMS entered 8000 January Avenue, DEA investigators stationed outside of 10827 Midland Boulevard saw the defendant quickly exit apartment #6 and rush toward his Chevrolet Malibu carrying a plastic bag. Investigators stopped the defendant and arrested him with the plastic bag. Inside of the plastic bag was $54,472.00 in drug proceeds from the sale and distribution of controlled substances the defendant was attempting to conceal from arresting investigators. A search was conducted of 10827 Midland Boulevard and another $8,760.00 of the defendant's proceeds from the sale and distribution of controlled substances was located and seized. The defendant's Malibu was also searched and investigators located cutting agents, quinine and platinum mannitol, in the

defendant's trunk. Both of these agents are used in drug distribution to dilute cocaine and/or heroin to increase the volume of controlled substances prior to a sale and increase the profitability of those substances.

### D. Amount of Controlled Substances Attributable to the Defendant.

The amount of controlled substances, in light of the known evidence, attributable to defendant is not subject to precise calculation. The parties have agreed the defendant should be held accountable for the 7 kilograms of cocaine he attempted purchase on October 6, 2018 that was intended for distribution.

### 5. STATUTORY PENALTIES:

#### a. Count I:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than twenty years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of at least three years.

### 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL.

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply:

#### a. Chapter 2 Offense Conduct:

(1) Base Offense Level:

**(a.) Drug Quantity:** The parties recommend and agree that the quantity of cocaine for which defendant is accountable, including relevant conduct, is at least 5 kilograms but less than 15 kilograms of cocaine resulting in a base offense level of 30 pursuant to U.S.S.G §2D1.1(c)(5).

**(b.) Career Offender Provision:** The parties anticipate that the defendant will be found to be a Career Offender under U.S.S.G. §4B1.1. Defendant has fully discussed this provision with his counsel and is fully aware that if he is determined to be a Career Offender, he will be subject to the base offense level of 32 under U.S.S.G. §4B1.1(b)(3), and Criminal History category VI under U.S.S.G. §4B1.1(b).

**(2) Chapter 2 Specific Offense Characteristics**: The parties recommend that the following Specific Offense Characteristics may apply:   None.

**b. Chapter 3 Adjustments**: The parties are unaware of any applicable Chapter 3 Adjustments, other than acceptance of responsibility.

**(1) Acceptance of Responsibility**: The parties recommend that three levels should be deducted pursuant to U.S.S.G §3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to U.S.S.G §3E1.1, without violating the plea agreement.

   d. **Other Adjustments and Disputed Adjustments:**        None.

   e. **Estimated Total Offense Level:** The parties estimate the Total Offense Level is 27. If the defendant is found to be a Career Offender, his Total Offense Level will be 29 and his criminal history category is VI.

   f. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

   g. **Effect of the Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

   a. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

   (1) **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER:

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions Not Barred; Effect on Other Governmental Agencies:**

  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

  **c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

  **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 2013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

  **e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

  **f. Fines, Restitution, and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

  **g. Forfeiture:** The defendant agrees to forfeit all of the defendant's interest in all items seized by law-enforcement officials during the course of their investigation. The defendant admits

that all United States currency, weapons, property, and assets seized by law enforcement officials during their investigation constitute the proceeds of the defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity. The defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the government and to rebut the claims of nominees and/or alleged third party owners. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in

fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in

its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

October 19, 2020
Date

/s/ John R. Mantovani
JOHN R. MANTOVANI, #50867MO
Assistant United States Attorney

10-31-20
Date

DAVID M. FOSTON
Defendant

10-31-20
Date

NICK ZOTOS
Attorney for Defendant

16